**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| BENJAMIN KEMPER, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MICRONET, L.T.D., and JOHN DOES | : | |
| I-V, | : Civil No.: | |
| | : | |
| Defendants. | : Judge | |

Benjamin Kemper, Plaintiff herein, complains of Micronet, L.T.D.,

(hereinafter "Micronet") and John Does I-V, Defendants herein, demands trial by jury

and as and for causes of action against Defendants, alleges as follows:

**PARTIES**

1.      Plaintiff Benjamin Kemper (hereinafter referred to as "Mr.

Kemper") is an individual who resides in the State of Utah.

2.      On information and belief, Defendant Micronet, L.T.D.

(hereinafter "Micronet"), is an entity doing business in the State of Utah, with a

principal place of business in the State of Utah, and a registered agent in the State of Utah, upon whom civil process may be served.

3.     Plaintiff alleges that, at all times relevant herein, Micronet employed him as an employee.

4.     John Doe I is an individual.  On information and belief, John Doe I is the owner and/or President of Micronet and, at all times relevant herein, acted directly and indirectly in the interest of Micronet in regards to Plaintiff's employment.

5.     Plaintiff alleges that, at all times relevant herein during his employment with Micronet, John Does I-V, exercised operational control over Micronet.

6.     Accordingly, Plaintiff alleges John Does I-V acted as an "employer" in regards to Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA") and is otherwise subject to liability to Plaintiff under the FLSA.

**JURISDICTION AND VENUE**

7.     Plaintiff alleges further that during such employment, Micronet and John Does I-V violated his rights under the federal FLSA, 29 U.S.C. §201, et. seq. Thus, Plaintiff brings this action to recover earned but unpaid overtime compensation, liquidated damages, attorney's fees and costs, and other appropriate relief under the provisions of the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §

2

201, et. seq. (hereinafter referred to as "FLSA".)  Jurisdiction is proper under 28

U.S.C. § 1331 (federal question).  Plaintiff also brings this action under Title VII of the

Civil Rights Act of 1964, as amended, which provides that it is unlawful to

discriminate against an employee in his employment on the basis of his race, national

origin, religion and gender.  Venue is proper under 28 U.S.C. § 1391 because the

Defendants reside in the judicial district of Utah, or otherwise may be found within the

judicial district of Utah and the causes of action alleged herein occurred within the

judicial district of Utah.

## STATEMENT OF FACTS

8.      Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 7 above as if alleged in full herein.

9.      On information and belief, Plaintiff alleges that at all times

material hereto, Micronet was an "enterprise engaged in commerce" as that term is

defined in 29 U.S.C. § 203 and, therefore, or otherwise, subject to the FLSA.

10.     Plaintiff began working for Micronet in early June 2014.

Ostensibly, Plaintiff's position was that of Chief Financial Officer, but he alleges that,

in reality, he had little authority and worked as a glorified clerk and record keeper.

11.     Plaintiff alleges his job duties included responsibility over accounts payable and accounts receivable, going through proper approval processes, and creating reports.

12.     Plaintiff alleges that, at all times relevant hereto, his direct supervisor was Chief Financial Officer ("CFO"), Amit Harari ("Harari",) whom he generally went through for approval processes.

13.     At all times relevant hereto, Micronet employed Plaintiff as an employee on the basis of a mutual understanding and agreement whereby Plaintiff agreed to work for Micronet, and Micronet agreed to compensate Plaintiff, in compliance with the FLSA and all other applicable federal, state and local laws and regulations.

14.     Plaintiff alleges he was not an independent contractor under the applicable Internal Revenue Code, Utah State Tax Commission, Utah Labor Commission and Utah Department of Workforce Services laws, regulations and rules, but, rather, was a bona fide, true, W-2 status, employee.

15.     On information and belief, Plaintiff alleges he did not perform the duties of, and Micronet did not treat him as an administrative, executive or professional employee, as those terms are defined in the FLSA statute and regulations.

4

16.     Although, at t all times relevant herein, Plaintiff was a highly paid employee, he did not regularly supervise other employees, he did not have authority to hire and fire any employees, he did not have authority to make decisions regarding company objectives or implementing strategies to seek to achieve such objectives, he did not have authority to make decisions regarding hours, pay or discipline of any employees and, generally, did not have the freedom to exercise discretion and independent judgment, especially with respect to matters of significance.

17.     By reason of such employment, Plaintiff was employed by an enterprise engaged in commerce, within the meaning of the FLSA and, therefore, or otherwise, entitled to the coverage, protections and benefits of the FLSA.

18.     Thus, Plaintiff alleges the coverage scheme of the FLSA entitled him and did not otherwise exempt him from entitlement to overtime compensation. Plaintiff specifically alleges he was a non-exempt employee for purposes of the applicability of the FLSA.

19.     Micronet agreed to pay Plaintiff for his work as a Chief Financial Officer at an annual salary, which was equivalent to an hourly rate of $53 per hour (which generated an overtime rate of $79.50 per hour).

5

20.     After employing Plaintiff on the basis set forth above, Micronet knowingly requested, required, suffered and permitted Plaintiff to work hours in excess of 40 hours per week.

21.     At all times relevant herein, Plaintiff regularly worked approximately 60 to 90 hours or more hours per work week.  Plaintiff alleges he averaged working approximately 70 to 80 hours a week.

22.     Plaintiff alleges he typically worked between 9 to 10 hours during the typical hours of a regular workday.  However, because the headquarters of Micronet was in Israel, and he was in Utah, he often had telephonic or other conferences with Micronet principals in Israel in the middle of the night in the United States (Utah time).

23.     Furthermore, Harari regularly called Plaintiff at night or in the early hours of the morning (Utah time).

24.     Plaintiff kept careful track of his work hours, by filling out and turning in daily sheets to Micronet's payroll person. Plaintiff alleges his records documenting the hours he worked were accurate, in accordance with the actual hours he actually worked.

25.     For all hours Plaintiff worked over 40 hours per work week, Plaintiff earned and Micronet should have paid Plaintiff time-and-a-half overtime

wages or the equivalent of overtime wages for all hours he worked over 40 hours per work week.

26.     Plaintiff alleges Micronet did not pay him any overtime pay.

27.     Thus, Plaintiff alleges that, during and throughout his employment with Micronet, Micronet knowingly required, suffered or permitted Plaintiff to work hours far in excess of 40 hours per week, but failed to pay Plaintiff overtime wages or the equivalent of overtime wages for any and all of the hours in excess of 40 hours per work week he worked.

28.     In addition, Plaintiff alleges that, from time to time during the course of Plaintiff's employment with Micronet, Plaintiff raised concerns with Micronet about being required to work many hours in excess of 40 hours per work week without getting paid overtime wages or the equivalent of overtime wages for such hours in excess of 40 hours per work week he worked.  Plaintiff alleges that, by so doing, he was engaged in protected activity, as that phrase is used in FLSA law.

29.     Despite such knowledge of Plaintiff working many hours in excess of 40 hours per work week without getting paid overtime wages or the equivalent of overtime wages for such hours in excess of 40 hours per work week, and, despite Plaintiff raising concerns therewith and objections thereto about not being paid overtime wages or the equivalent of overtime wages for the hours Plaintiff worked in

7

excess of 40 hours per work week, Micronet and John Does I-V failed and have failed to pay Plaintiff overtime wages or the equivalent of overtime wages for any and all of the hours in excess of 40 hours per work week which Plaintiff worked for Micronet, in violation of 29 U.S.C. §207 and 29 C.F.R. § 778.315 and 316.

30.     On information and belief, Mr. Kemper alleges such violation was a wilful violation, entitling him to file this claim and access the three-year statute of limitations available under the FLSA for wilful violations.  Plaintiff alleges that Micronet wilfully violated the FLSA on the basis of several facts, including that, (a) as alleged in ¶ 28 above, he repeatedly put Micronet on notice that he was claiming that he should be getting paid overtime compensation for all hours he was working in excess of 40 hours per work week and was not getting paid overtime compensation for such hours; and (b) on information and belief, Plaintiff alleges Micronet paid other employees in Utah who worked hours in excess of 40 hours a work week, time-and-a-half overtime compensation for any hours they worked in excess of 40 hours a work week, thus, reflecting a knowledge of what the FLSA required it to do with respect to non-exempt employees.

31.     Throughout Plaintiff's employment with Micronet to August 19, 2016, Micronet continued to require, suffer or permit Plaintiff to work overtime hours, but failed to pay him overtime compensation.

32.     On or about August 19, 2016, Plaintiff and Micronet completely ended their employment relationship with each other.  Plaintiff alleges his protected activity, as alleged in ¶ 28, was a motivating factor in Micronet's decision to terminate his employment.

33.     At all times relevant hereto, Micronet, Inc. (hereinafter "Defendant" or "Micronet"), employed 15 or more employees.

34.     On February 8, 2017, Plaintiff filed a Charge of Discrimination in which he alleged that Defendant had discriminated against him based on his race, gender, national origin, and religion and had retaliated against him for engaging in protected activity.

35.     Plaintiff alleges that he is Caucasian, male, American, and is LDS with strongly held religious beliefs.

36.     Plaintiff alleges that, throughout his employment, he was discriminated against by Harari due to his national origin, race, gender and religious beliefs.  Harari is Israeli, and male, Jewish, and made comments to Plaintiff, such as "you are not Israeli enough".  Furthermore, Defendant gave only Israeli employees in the office, any decision-making authority, while other, American, members of management, like Director of Operations, Alan Ericson ("Ericson"), did not have authority to make decisions without approval from an Israeli manager.

37.    Ericson's position was similar to Plaintiff's.  The two were peers and Ericson directed the operations aspect of the business while Plaintiff directed the financial operations.

38.    Ericson personally felt he would have difficulty finding further upward mobility within Defendant due to not being Israeli.  After Ericson resigned, Ericson told Plaintiff that he (Plaintiff) would never receive a promotion because he is not Israeli.

39.    Harari also questioned Plaintiff's religious belief, often stating that he "cannot trust a man that doesn't drink [alcohol]", and that because Plaintiff does not drink coffee he is not "Israeli enough".

40.    Plaintiff also alleges that, throughout his employment, he was contacted by Harari, and the CFO prior to Harari, Tali Dinar ("Dinar"), on Sundays. This practice included an incident on December 13, 2015, in which, when Dinar asked that he call her back, he responded that he had a meeting at church and asked if he could call her the following day, to which Dinar stated "yes," and an incident on March 27, 2016, in which Harari questioned him about two payments he had made.

41.    Plaintiff alleges that Harari also frequently contacted him on Sundays, a day which Plaintiff observes as the Sabbath and does not work on due to his religious beliefs.  Harari also disrespected Plaintiff's religious beliefs by contacting

10

him about work-related issues on Sundays and religious holidays, both of which Plaintiff does not work in religious observance.  For example, on Easter day, March 28, 2016, Harari e-mailed Plaintiff asking him to call as soon as he got up and Plaintiff did not reply as it was Easter and a Sunday.

42.     Plaintiff alleges that, as part of Plaintiff's religious beliefs, he engages in religious practices at an LDS temple and, in order to gain entrance to such a temple, Plaintiff possessed an authorization card.  On multiple occasions Harari asked to borrow Plaintiff's "Mormon card" from Plaintiff in a joking and derogatory manner.

43.     Plaintiff alleges that Harari also frequently questioned Plaintiff's religious beliefs making statements such as "aren't you old enough to make your own decisions?", "do you always do what your church tells you?", mocking him for not drinking alcohol and coffee, and offering to buy him coffee.

44.     Despite Plaintiff's numerous complaints to Harare, for example, telling Harari that what he was saying "was not funny" and asking him to not make such comments, this conduct continued until Plaintiff's eventual termination.

45.     Plaintiff alleges that, on June 7, 2016, he sent Harari an e-mail after the two had had a meeting in which Harari had become angry and hostile towards Plaintiff.  In the e-mail, Plaintiff discusses the disrespectful manner in which Harari speaks to him, such as frequently raising his voice.

46.      On June 8, 2016, Harari sent Plaintiff a reply in which he accused Plaintiff of poor performance in several instances, many of which Plaintiff alleges were false.  For example, on March 29, 2016, Harari had requested a money transfer and, in the June 8, 2016 e-mail, he states that this request was never sent, but Plaintiff had actually sent the transfer the same day.

47.      In late June and early July 2016, Plaintiff went to North Carolina on two separate occasions, due to the death of his mother.  On both of these occasions, Harari asked Plaintiff not to go and instructed him to be available to receive phone calls and e-mails.  During these trips, Harari contacted Plaintiff on a number of occasions.  After Plaintiff returned from his mother's funeral, Harari blamed Plaintiff for "being where [Plaintiff] was" as the reason for confusion over various work issues.

48.      On August 3, 2016, Harari made a statement in the office that it was "nice" to see so many female faces.  This comment was also heard by Executive Administrative Assistant, Michelle Chatterton ("Chatterton").  Chatterton  verified having heard the comment in an August 18, 2016 e-mail to Plaintiff.

49.      Plaintiff alleges that Defendant terminated his employment on August 19, 2016, and that Defendant has stated that the motivating factor in the decision to terminate his employment was his alleged failure to provide "Opus Bank materials," which placed a line of credit in jeopardy.

50.     Plaintiff alleges he provided the "Opus Bank materials" to Defendant via e-mail on June 29, 2016, and, therefore, that the reason for the termination was pretextual.

51.     Plaintiff alleges that, after his termination, he was replaced by an employee who had been hired previously as his assistant, such employee was Caucasian, American, female, and non-LDS.

52.     Plaintiff alleges that the real motivating factor behind Micronet's decision to terminate his employment had to do with his complaints about not getting paid overtime compensation, his national origin, race, gender, and religion and his complaints about the discriminatory way Harare was treating him.

## DAMAGES

53.     Mr. Kemper alleges Defendants' actions and inactions have caused him various losses, injuries and other damages, including lost wages and benefits.

54.     As and for causes of action against the Defendants, Plaintiff alleges as follows:

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES OR THE EQUIVALENT OF OVERTIME WAGES FOR OVERTIME HOURS WORKED AND RETALIATION

13

55.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 54 above as if alleged in full herein.

56.    Throughout his employment with Micornet, including up to approximately August 19, 2016, Plaintiff worked approximately 70 to 80 or hours or more per work week for Micronet.

57.    Plaintiff worked all of such hours but Defendants did not pay Plaintiff and have not paid Plaintiff time and a half overtime wages or the equivalent of overtime wages for any and all of such work in excess of 40 hours per work week.

58.    As alleged above, such failures to pay overtime wages or the equivalent of such overtime wages for such overtime work constitute violations of the FLSA.

59.    Plaintiff alleges such violations of the FLSA were continuing violations.

60.    Plaintiff estimates the amount owing to him for earned, unpaid overtime wages or the equivalent of overtime wages from June 6, 2014 to August 19, 2016, based on the hours in excess of 40 hours per work week and his rates of pay, is the sum of $79.50 per hour x 30 hours per week = $2,385 per week x 118 weeks = $281,430, or from June 21, 2016 to August 19, 2016, the sum of $11,925.

14

61.     At this point in time, Plaintiff can only allege approximate

amounts of overtime compensation due to him because (a) Defendants may dispute the

validity of his records concerning the number of hours Plaintiff was required, suffered

or permitted to work each work week in excess of 40 hours per work week for which

he has not been paid overtime wages or the equivalent of overtime wages; (b) other

records which may be relevant to his work hours may be in the exclusive possession

and control of Defendants or may have been altered or destroyed or no longer exist or

never existed; and (c) because Defendants may dispute the method of calculating his

rate of overtime wages or the equivalent of overtime wages.  Plaintiff hereby makes

claims under the FLSA for whatever amounts of earned but unpaid overtime wages the

facts and evidence as to his work hours and rates of pay dictate.

62.     On information and belief, Plaintiff alleges that the facts dictate

the amounts of overtime wages set forth above.

63.     On information and belief, Plaintiff alleges the failure on the part

of Defendants to pay Plaintiff overtime wages or the equivalent of overtime wages for

all of the hours he worked in excess of 40 hours per work week was intentional,

willful, reckless and/or a product of deliberate indifference, entitling Plaintiff to claim

up to three years of earned but unpaid overtime wages and, if he is successful in

establishing entitlement to overtime wages or the equivalent of overtime wages, to an

15

award of an additional amount equal to the amount of overtime wages, found due as liquidated damages under the FLSA, 29 U.S.C. §216.

64.     On information and belief, Plaintiff alleges such violations were willful on the basis of several facts and grounds, including, but not limited to: (1) Defendants knew, or should have known, that they needed to keep their time-keeping and compensation practices in compliance with the FLSA and other laws and regulations regulating the workplace; (2) on information and belief, Mr. Kemper alleges Micronet paid other employees in Utah who worked overtime hours, time-and-a-half for any hours they worked in excess of 40 hours a work week; and (3) nevertheless, Defendants recklessly disregarded the requirements of FLSA and other similar laws and regulations regulating the workplace in regards to how it treated Mr. Kemper.

65.     Thus, Plaintiff alleges that Defendants deliberately required, permitted or suffered Plaintiff to work many hours over 40 hours per work week and required him to perform work before and after normal business hours and knew he was doing so, and that they had an obligation to pay him overtime wages or the equivalent of overtime wages for such hours in excess of 40 hours per week, but, nevertheless, intentionally, knowingly or recklessly, failed to keep track of his work hours and failed

to pay him overtime wages or the equivalent of overtime wages for any and all of the hours in excess of 40 hours per work week he worked.

66.     Plaintiff also alleges that, to pursue his claims, he has been required to hire an attorney and, if he prevails, by settlement or otherwise, such attorney will be entitled to reasonable attorney's fees and costs under the FLSA, 29 U.S.C. §216 (b).

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT — BONUS**

67.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 66 above as if alleged in full herein.

68.     Defendant Micronet had an arrangement with Plaintiff to pay him a bonus of $50,000.

69.     Plaintiff did whatever was necessary to earn said bonus and did earn such bonus.

70.     When Micronet terminated Plaintiff's employment, Micronet became obligated to pay Plaintiff the bonus in the amounts set forth above.

71.     Micronet has failed to pay Plaintiff the bonus Plaintiff earned.

72.     Such failure constitutes a breach of contract, which has caused Plaintiff to suffer losses and other damages.

**THIRD CAUSE OF ACTION**

17

**DISCRIMINATION BASED ON PLAINTIFF'S NATIONAL
ORIGIN, RACE, GENDER, AND/OR RELIGION
MOTIVATED DEFENDANT'S DECISION TO TERMINATE
HIS EMPLOYMENT AND RETALIATION**

73.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 72 above as if alleged in full herein.

74.     In order to state a claim of discrimination based on national origin, race, gender, and religion, Plaintiff must allege facts which establish, or tend to establish, that: (1) he is a member of protected classes; (2) he was qualified for the position he held; (3) Defendant subjected him to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

75.     Plaintiff is American, Caucasian, male and LDS with strongly held religious beliefs, and, therefore, a member of protected classes.

76.     Plaintiff was qualified for the position he held.  Plaintiff's allegations satisfy the first two elements.

77.     Plaintiff alleges that he was subject to an adverse employment action.  An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits".  *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (*internal quotation omitted*).

18

78.     Plaintiff alleges that Defendant subjected him to an adverse employment action when it terminated his employment on August 19, 2016.  Plaintiff's allegations satisfy the third element.

79.     Plaintiff alleges that the circumstances surrounding his termination give rise to an inference of discrimination.  Potential circumstances that give rise to discrimination include: (1) disparate treatment which but for the employee's protected trait would be different, *International Union v. Johnson Controls, Inc.,499* U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision.  *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).  Furthermore, an individual's termination may give rise to an inference of discrimination where there were also discriminatory comments made regarding the employee or others in his protected group.  *Abdu-Brissony v. Delta Air Lines, Inc.,* 239 F:3d 456, 468 (2nd Cir. 2001).

80.     Plaintiff alleges that the comments made by Harari about not being "Israeli enough," as well as his comments about "needing more women" in the office and being replaced by a female employee, Harari's comments about Plaintiff's religion and religious practices, and being contacted by Harari on Sundays support an inference of discrimination.

19

81.     Plaintiff alleges Defendant subjected Plaintiff to unwelcome and unwanted conduct.  As set forth above, Plaintiff alleges a number of incidents of unwelcome and unwanted conduct, including Harari making comments about his race, national origin and about his gender, and about his religious beliefs, and Harari contacting him for work-related issues on Sundays, religious holidays, while he was in the hospital, and while attending the funeral of a close family member.

82.     Plaintiff alleges the conduct complained of was based on Plaintiff's national origin, race, gender and religion.

83.     Plaintiff's allegations state a prima facie case of discrimination based on national origin, race, gender, and religion.

84.     Plaintiff alleges his protected activity, as alleged in ¶ 44 above, was a motivating factor in Micronet's decision to terminate his employment.

## PRAYER FOR RELIEF

WHEREFORE, on Plaintiff' First Cause of Action, Plaintiff demands a trial by jury and prays that judgment be entered against Defendants, jointly and severally, together and individually, for overtime wages or the equivalent of overtime wages, or such lesser or greater amount as the facts as to the exact number of hours of overtime worked and exact rate of overtime pay, dictate, together with an additional amount, equal to the amount of overtime wages found due, as liquidated damages, and

reasonable attorney's fees and costs, all under the provisions of the Fair Labor

Standards Act of 1938, as amended, and such other legal and equitable relief as may be

appropriate to effectuate the purposes of the FLSA.

On Plaintiff's Second Cause of Action, Plaintiff prays judgment be

entered against Defendants, joint and severally, in the amount of $50,000.

On Plaintiff's Third Cause of Action, Plaintiff prays for an Order and

Judgment:

1.      Declaring that Defendants discriminated against Mr. Kemper on

the basis of his national origin, race, gender and/or religion and

retaliation, in violation of Title VII;

2.      Awarding Mr. Kemper "make whole" relief, including awarding

Mr. Kemper the lost wage and lost benefit differential from the

time Defendants terminated Mr. Kemper until Mr. Kemper secures

comparable employment, or for a period of five years, whichever

occurs first;

3.      Awarding Mr. Kemper his reasonable attorney's fees and costs;

4.      Awarding Mr. Kemper such other relief as may be just and

equitable.

DATED this 20th day of June, 2019.

21

    */s/ David J. Holdsworth*
David J. Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Benjamin Kemper, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.


_/s/ Benjamin Kemper_____
Benjamin Kemper


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of June, 2019.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

_____